IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Bryan Sailer,**

        **Plaintiff,**

v.                                                    Case No. 24-cv-1242-JWL

**Emporia State University and**
**David Spafford,**

        **Defendants.**

## MEMORANDUM & ORDER

Plaintiff Bryan Sailer was employed by defendant Emporia State University (hereinafter "ESU") as the head coach for ESU's women's soccer team for more than ten years when ESU terminated his employment in December 2023. Plaintiff filed this lawsuit against ESU alleging that ESU terminated plaintiff's employment in retaliation for plaintiff's complaints about sex discrimination on behalf of the women's soccer team, in violation of Title IX of the Education Amendments Act of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq. Plaintiff further asserts a First Amendment claim under 42 U.S.C. § 1983 against defendant David Spafford, ESU's Athletic Director.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants move to dismiss both claims (doc. 13).[1] Defendant Spafford further asserts the defense of qualified immunity. As will be explained, the motion is denied in part and granted in part with respect to plaintiff's Title IX

---

[1] In response to defendants' initial motion to dismiss (doc. 6), plaintiff filed an amended complaint. Defendants have now moved to dismiss the amended complaint. The court resolves that motion here and defendants' initial motion is moot.

retaliation claim against defendant ESU and is granted with respect to plaintiff's First Amendment retaliation claim against defendant Spafford.

**Standard**

The court will grant a motion to dismiss for failure to state a claim when a plaintiff's factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See id*. at 555. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id*., and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**Background**

Consistent with the applicable standard, the court accepts as true the following well-pleaded facts alleged in plaintiff's amended complaint. *See Kenney v. Helix TCS, Inc.,* 939 F.3d 1106, 1109 (10th Cir. 2019). Plaintiff Bryan Sailer was employed as the head coach for defendant ESU's women's soccer team for more than ten years. During that time, plaintiff was "the winningest coach in program history." At all times relevant to plaintiff's claims, defendant David Spafford has been ESU's Athletic Director. It is undisputed that ESU receives federal financial assistance.

In October 2023, the captains of the ESU women's soccer team delivered a letter to ESU administrators, including University President Ken Hush and defendant Spafford. In that letter, which plaintiff has attached to his amended complaint,[2] team members complained about various issues affecting the women's soccer team. The primary focus of the letter was a complaint about the University's soccer field, which was unusable and required the team to play their games at a local high school which, in turn, diminished their home field advantage and fan support. According to the letter, the field was neglected for over a year. Team members also highlighted that nearly every team they competed against played on their school's football stadium field and that ESU had an opportunity with an upcoming football stadium remodel to include soccer lines on the ESU football field. The letter also set forth complaints about the team's weightlifting sessions during the season, highlighting dissatisfaction with the team's designated strength-training coach and shared sessions with the men's and women's basketball teams. The letter also expressly references Title IX, includes a brief summary of the Supreme Court's decision in *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 184 (2005), and suggests that ESU's men's athletic teams are treated more favorably by school administration. Plaintiff alleges that he

---

[2] Generally, a court may consider only the contents of a complaint when ruling on a motion to dismiss. *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024) (citing *Goodwill Indus. of Cent. Okla., Inc. v. Philadelphia Indem. Ins. Co.*, 21 F.4th 704, 709 (10th Cir. 2021)). But a court may also "consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *J.H. v. Anthem Blue Cross Life & Health Ins. Co.*, 137 F.4th 1147, 1150 (10th Cir. 2025) (quoting *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1286 n.3 (10th Cir. 2023)). Plaintiff has attached as exhibits to his complaint a copy of the team's letter, defendant Spafford's response to that letter, and the Title IX investigator's "outcome letter" resolving plaintiff's Title IX complaint arising from his termination. In the absence of any argument from defendants that the documents should not be considered, the court considers those documents here.

3

assisted the women's soccer team in drafting the letter and provided guidance on the contents of the letter. He does not allege that anyone at ESU knew that he assisted in drafting the letter or knew that he provided guidance to the team about the letter. He further alleges that he told defendant Spafford and Mr. Hush "that the letter would be delivered to them, and that he supported the team."

According to plaintiff, these concerns were not new to ESU. Plaintiff alleges that, during the year prior to the letter, he had complained to defendant Spafford "about these and similar inequity issues such as the weights coach who was a staff member for the football team would get first priority for the football team." Plaintiff further alleges that in September 2023, he complained to Senior Associate Athletic Director Colleen Mischke that game film "was unwatchable because of a lack of planning on ESU Operations' part" and that "if this involved the football team, it would not have happened."

In November 2023, the ESU women's soccer team defeated Washburn University to advance to the Mid-America Intercollegiate Athletics Association (MIAA) championship game, held in Wichita, Kansas. The team chartered a bus for the trip to the game. ESU won the MIAA championship, marking the team's second MIAA championship in plaintiff's thirteen seasons as head coach. The championship was seen as a major accomplishment by the team and ESU.

After the game, the senior players took shots of alcohol, while posing with the trophy for photos. Defendant Spafford and other University officials were nearby. The team then boarded the bus to make the one-hour return trip to Emporia, Kansas. Before the bus departed, plaintiff walked to the back of the bus to retrieve the championship trophy. He alleges that he did not see any alcohol. Plaintiff returned to his seat at the front of the bus. His fourteen-year-old son was in

the seat behind him. Plaintiff spoke on the phone with his father to update him on the team's championship. After that, plaintiff responded to several messages about winning the championship. Plaintiff was aware the team was loud and rowdy, but that was not a surprise to him because they had just won a conference championship.

Plaintiff alleges that he made a second trip to the back of the bus as the team was arriving in Emporia. He saw a bottle of alcohol, but did not see anyone drinking alcohol at that time. One of the players offered plaintiff a drink and he declined. Because the bus was already back in Emporia when the alcohol was noticed, plaintiff advised the players to be safe and not to drive if they had been drinking. The following morning, a Sunday, plaintiff saw a social media post depicting his players taking a shot with the championship trophy. Plaintiff told his players to take the post down.

On the Monday following the championship game, defendant Spafford texted plaintiff at approximately 8:10 AM and instructed him to come to work immediately. When plaintiff arrived at the ESU athletic building, defendant Spafford greeted him in the lobby. Defendant Spafford promptly told plaintiff that the NCAA had contacted him about hosting a regional women's soccer tournament. Plaintiff told defendant Spafford that he thought the meeting concerned the social media post of team members taking shots. Defendant Spafford stopped plaintiff, saying "No." They proceeded to defendant Spafford's office and discussed the logistics of hosting the tournament. There was no further discussion of the consumption of alcohol by the student athletes.

ESU hosted the first two rounds of the NCAA Division II women's soccer tournament on November 17th and 19th, 2023. The women's soccer team won both of those games and advanced in the tournament. On November 20, 2023, the assistant coach Chloe Marquez and the graduate

assistant for the soccer team reported to defendant Spafford that the team had been drinking on the bus following the conference championship game. In the meeting, Ms. Marquez and the graduate assistant alleged that plaintiff was aware of the drinking and had participated in it. At the time of the report, defendant Spafford was aware there had been tension between plaintiff and these two reporting witnesses throughout the season. Defendant Spafford previously had to address concerns over Ms. Marquez and the graduate assistant badmouthing plaintiff to team members. According to plaintiff, Ms. Marquez, during the season, tried to get women's soccer team players to make complaints about plaintiff and said that she wanted to get him fired.

On November 21, 2023, defendant Spafford brought Ms. Marquez and the graduate assistant's complaint to human resources, and Human Resources Director Ray Lauber began an investigation. That same day, defendant Spafford emailed the women's soccer captains to acknowledge receipt of the letter and their "comments regarding Title IX." In his response, defendant Spafford stated that plaintiff should have communicated to the team about the field situation as that situation was progressing; that plaintiff had selected the timing and frequency of the team's strength training sessions; and that, consistent with industry standard, ESU had already planned an in-depth Title IX review of the athletic department that would be taking place in the next two months.

The following day, November 22, 2023, ESU suspended plaintiff and instructed him not to communicate with players and staff. ESU banned plaintiff from campus unless his visits were coordinated through HR. Ultimately, after conducting what plaintiff describes as a sham investigation, ESU terminated plaintiff's employment in early December 2023 despite the fact that, according to plaintiff, ESU tolerated alcohol use by student-athletes on other occasions.

6

Plaintiff filed an internal Title IX complaint with ESU asserting that his employment was terminated because he supported the team's Title IX complaint. In her "outcome letter," which is attached to the amended complaint, ESU's Title IX coordinator acknowledged that plaintiff has "openly supported" the women's soccer team's Title IX complaint such that he was protected from retaliation, but determined that plaintiff's termination was not based on his support of the team's Title IX complaint.

**Title IX Claim**

In Count I of his complaint, plaintiff alleges that ESU retaliated against him for complaining about sex discrimination on behalf of the women's soccer team in violation of Title IX. Title IX prohibits educational institutions that receive federal assistance from discriminating on the basis of sex. 20 U.S.C. § 1681(a) (1990). Title IX states:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance . . . .

*Id*. Title IX also "prohibits retaliation against individuals because they have complained of sex discrimination." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017). Thus, to state a claim for retaliation under Title IX, a plaintiff must allege that the defendant "retaliated against him *because* he complained of sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (emphasis in original). This generally means that a plaintiff must show that his

or her employer took adverse employment action against the plaintiff based on the plaintiff's protected activity. *Hiatt*, 858 F.3d at 1316 (10th Cir. 2017).³

ESU moves to dismiss this claim on the grounds that plaintiff has not plausibly alleged that he made complaints of sex discrimination. According to ESU, plaintiff "complained about the condition of the soccer field, his team's limited access to weight training and team film, and he supported his team's complaints about the field and weight room. Such complaints are not complaints of sex discrimination as required by *Jackson*." Aside from setting forth pertinent legal standards, this is the extent of ESU's argument. ESU has not provided any case law in analogous contexts that might support dismissal of this claim and, more importantly, has not attempted to come to grips with the allegation that the soccer team's letter contained express references to Title IX and *Jackson*. Because ESU has ignored the specific contents of the team's letter, it has not analyzed the significance, if any, of plaintiff's statement of support of the team in discussing that letter with President Hush and defendant Spafford. To the extent, then, that plaintiff's retaliation claim is based on his statement of support, made to President Hush and defendant Spafford, the motion to dismiss is denied. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (stating that "every circuit court to address this issue—[the Seventh Circuit] included—has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal"); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (4th ed.) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists").⁴

---

³ In *Hiatt*, the Circuit used Title VII's substantive standards and the *McDonnell Douglas* framework for purposes of analyzing a Title IX retaliation claim. *See Hiatt*, 858 F.3d 1315 n.8.
⁴ Because plaintiff does not allege that anyone at ESU knew that he assisted the team in drafting the letter and provided guidance as to the contents of the letter, this activity cannot support his

To the extent plaintiff's claim is based on his other complaints as described in the amended complaint, the motion is granted. Without exception, these comments do not constitute protected activity for purposes of his Title IX retaliation claim. His comments to Ms. Mischke about the team's ability to access game film did not include any reference to Title IX or gender discrimination. Plaintiff does not suggest otherwise in his response to the motion. His complaint to defendant Spafford that the "weights coach who was a staff member for the football team would get first priority for the football team" similarly does not include a reference to Title IX or relay concerns of gender discrimination. While plaintiff's amended complaint includes allegations that plaintiff complained that ESU's football team was treated more favorably than the women's soccer team, this is not the same as a complaint about disparate treatment based on gender. *See Cano v. Harlandale Indep. Sch. Dist.*, 2020 WL 7385843, at *4 (W.D. Tex. Dec. 16, 2020) ("As there are myriad differences between football and the dance team besides the gender of the majority of each activity's participants, this is not differential treatment of similarly situated individuals. Title IX liability does not arise based solely on the fact that different sports teams might require different treatment based on the unique training, safety, performance, and other specific factors related to each."); *Davis v. Austin Indep. Sch. Dist.*, 2020 WL 6434853, at *6 (W.D. Tex. Nov. 2, 2020) (complaint that Color Guard team was treated differently than school's football team was not a complaint about gender discrimination). Plaintiff does not allege that

---

retaliation claim. *See Peterson v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002) (an entity's alleged adverse action against an individual cannot be because of that individual's protected conduct unless the entity knows the individual has engaged in the protected activity); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (plaintiff must show that the individual who took adverse action against her knew of the plaintiff's protected activity).

9

when he complained about favorable treatment for the football team, he complained that the difference in treatment was based on gender. If he had complained about disparate treatment between the football team and the women's soccer team and had complained that the difference was based on gender, then this aspect of plaintiff's retaliation claim would likely survive the motion to dismiss.

For the foregoing reasons, defendant's motion to dismiss plaintiff's Title IX retaliation claim is granted in part and denied in part.

**First Amendment Retaliation Claim**

In Count II of his complaint, plaintiff alleges that defendant David Spafford terminated plaintiff's employment in retaliation for plaintiff's exercise of his First Amendment rights. He seeks relief for this alleged retaliation under 42 U.S.C. § 1983. *See id*. (providing "[e]very person who, under color of [the law] . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law"). Specifically, plaintiff alleges that his support of his team's Title IX complaint to ESU administration is a matter of public concern and that, because his official duties did not include supporting his team's Title IX complaint, his speech is protected by the First Amendment.[5]

---

[5] In his response to the motion to dismiss, plaintiff characterizes his speech as "accusing his employer of violating federal civil rights laws," taking an "adversarial posture against University administration," and "advocating for Title IX gender equity." Because these characterizations do not find support in the specific allegations contained in the amended complaint (plaintiff never alleges that he referenced Title IX or gender in any respect), the court relies instead on those specific allegations in analyzing plaintiff's speech.

10

When, as here, a public employee brings a free speech retaliation claim against his employer, the court applies the "familiar five-part *Garcetti/Pickering* test." *McNellis v. Douglas County Sch. Dist.*, 116 F.4th 1122, 1132 (10th Cir. 2024) (quoting *Duda v. Elder*, 7 F.4th 899, 910 (10th Cir. 2021)). That test, derived from *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Pickering v. Board of Education*, 391 U.S. 563 (1968), looks to whether

> (1) the speech was made pursuant to the employee's official duties, (2) the speech was on a matter of public concern, (3) the government's interests as an employer in promoting efficient public service outweigh a plaintiff's free speech interests, (4) the speech was a motivating factor in the adverse employment action, and (5) the same employment decision would have been made without the protected speech.

*Id*. (quoting *Roberts v. Winder*, 16 F.4th 1367, 1381 (10th Cir. 2021)). These five factors are "essential elements" of a First Amendment retaliation claim brought by public employees under § 1983. *Id*. (citing *Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1138 (10th Cir. 2024)).

Defendant Spafford moves to dismiss plaintiff's First Amendment retaliation claim on the grounds that plaintiff has not plausibly alleged that his speech was made as a private citizen for purposes of the first step of the *Garcetti/Pickering* test.[6] Plaintiff, in response, urges that speaking about Title IX compliance issues was not one of his job duties such that his speech was necessarily made as a private citizen. As will be explained, plaintiff has not plausibly alleged that, in supporting the team's Title IX complaint, he was speaking as a private citizen and not as an employee of ESU. The court, then, dismisses plaintiff's claim against defendant Spafford.

---

[6] Defendant Spafford also moves to dismiss this claim because plaintiff has not plausibly alleged that he was speaking on a matter of public concern. Because the court finds the first prong dispositive, it declines to address this argument.

11

The Tenth Circuit takes "a broad view of the meaning of speech that is 'pursuant' to an employee's 'official duties.'" *Id*. at 1133 (quoting *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008)). "These decisions, however, have not developed a set of bright line rules to determine when an employee speaks pursuant to [his or] her official duties for the purposes of *Garcetti/Pickering*." *Id*. (quotations omitted). Rather, the Circuit uses "a case-by-case approach, looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Id*. (quoting *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010)). "Merely because an employee's speech was made at work and about work does not necessarily remove that employee's speech from the ambit of constitutional protection." *Id*. (quoting *Thomas*, 548 F.3d at 1323). Instead, "speech is made pursuant to official duties if it is generally consistent with 'the type of activities [the employee] was paid to do.'" *Id.* (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad*., 492 F.3d 1192, 1203 (10th Cir. 2007)). "[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Id*. (quoting *Brammer-Hoelter*, 492 F.3d at 1203). "The ultimate question is whether the employee speaks as a citizen or instead as a government employee—an individual acting 'in his or her professional capacity.'" *Id*. (quoting *Brammer-Hoelter*, 492 F.3d at 1203).

Defendant Spafford contends that plaintiff's speech as set forth in the amended complaint was made as part of his assigned responsibilities as head coach of the women's soccer team. The court agrees. His comments to Ms. Mischke related only to the team's ability to watch game film, an issue which undoubtedly relates to his official duties as head coach of a team—navigating the

internal operations of the school's Athletic Department. Plaintiff does not allege that he raised any Title IX issues or suggested to Ms. Mischke that issues relating to game-film access were based on the gender. Similarly, his complaint to defendant Spafford that the "weights coach who was a staff member for the football team would get first priority for the football team" falls squarely within his responsibilities as head coach in terms of obtaining strength training times and proper strength coaching for his team. And while this complaint perhaps raised an issue of disparate treatment between the women's soccer team and the football team, there is no suggestion that the complaints were phrased in terms of gender-equity concerns. Rather, this complaint is consistent with a theme found throughout plaintiff's complaint and its attachments—the ESU football team was prioritized over all other sports teams.

That leaves only the letter signed by members of the women's soccer team and delivered to President Hush and defendant Spafford. According to plaintiff's allegations, he advised President Hush and defendant Spafford that "the letter would be delivered to them, and that he supported the team." The specific context of this speech—giving his supervisors a "heads up" that the letter was coming and that he supported his team—reflects that the speech was made in his role as head coach. Importantly, plaintiff's knowledge of the timing and contents of the letter is strictly owed to his role as head coach of the team. His knowledge of his players' concerns is owed to his role as head coach. And, of course, facilitating discussions between his team and ESU administration about concerns was certainly in his capacity as head coach. *See Brammer-Hoelter*, 492 F.3d at 1203. ("[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."). Simply put,

nothing in plaintiff's amended complaint plausibly suggests that plaintiff was speaking as an ordinary citizen.

It is also significant that plaintiff's speech, without exception, was directed at individuals within his chain of command—President Hush, defendant Spafford, and Ms. Mischke. *See McNellis*, 116 F.4th at 1134 ("But we have 'observed that speech directed at an individual or entity outside of an employee's chain of command is often outside of an employee's official duties,' while 'speech directed . . . within an employee's chain of command is often found to be pursuant to that employee's official duties." (quoting *Rohrbough*, 596 F.3d at 747)). While not dispositive, because all communications were maintained exclusively with plaintiff's chain of command, this further suggests that plaintiff was speaking pursuant to his official duties. *Compare McNellis,* 116 F.4th at 1134 (principal's responses in internal email thread that included only school staff members further suggested that principal was speaking pursuant to official duties) *with Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1251 (10th Cir. 2024) (finding the first *Garcetti/Pickering* prong "weighs in Plaintiff's favor" where "Plaintiff voiced criticism through his personal Facebook page, independent news outlets, and at public comment sessions—all forums citizens often use for civic discourse"); *Brammer-Hoelter*, 492 F.3d at 1205 (finding some of the speech at issue "pass[ed] the first step of the *Garcetti/Pickering* analysis" in part because "the discussions included ordinary citizens and parents who were not employed by the [defendant]").

Plaintiff argues his speech was not made pursuant to his official duties because it involved Title IX compliance issues that were well outside his role as head coach of the women's soccer team. But speech can be made within a plaintiff's official job duties even though it is not

required or expressly included in those duties. "An employee's official job description is not dispositive" of the question of whether that employee's speech is made pursuant to his or her official duties. *McNellis*, 116 F.4th at 1136 (quotations omitted). As the Circuit has emphasized, "speech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform." *Id*. The key is whether the speech is "generally consistent with the type of activities the employee was paid to do." *Id*. (quotations omitted).

Here, as the court has explained, plaintiff's speech was consistent with the types of activities he was hired to perform—navigating the internal operations of ESU's athletic department on behalf of the team in terms of access to game film; access to favorable strength-training times and coaching; and access to adequate facilities including the soccer field; and supporting the concerns of his players, including his team's concerns that male sports teams were potentially receiving more favorable treatment than the women's soccer team. And even assuming that plaintiff's statement of support concerning the team's letter could be construed as a report of Title IX noncompliance, the court would nonetheless conclude that plaintiff's speech was made within the scope of his official duties as head coach. *See Rohrbough*, 596 F.3d at 750–51 (holding that plaintiff's communications with other hospital employees about an alleged staffing crisis, alleged incidents of sub-standard care, and a heart misallocation "were all within the scope of [plaintiff's] official duties under the first prong of the *Garcetti/Pickering* analysis"); *see also Ellison v. Roosevelt Cnty. Bd.*, 700 Fed. Appx. 823, 829-30 (10th Cir. 2017) (affirming district court's Fed. R. Civ. P. 12(b)(6) dismissal of a deputy sheriff's First Amendment retaliation claim because his alleged speech—which included a disagreement with a lieutenant about the legality

15

of a traffic stop and his reports about another officer's misconduct—were within the scope of his official duties); *Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 800-01 (10th Cir. 2007)) (holding that drug lab employee's disagreement with her supervisors concerning the need for a formal testing policy and her unauthorized procurement of a test to confirm the need for such a policy were pursuant to her official duties).

Construing plaintiff's allegations in his favor, he was speaking as the head coach of the women's soccer team in connection with his complaints and his expression of support as set forth in his amended complaint. Accordingly, his alleged speech is not afforded First Amendment protections and he has failed to plead a plausible § 1983 claim.[7] Because plaintiff has failed to plead facts sufficient to state a plausible First Amendment retaliation claim, defendant Spafford is also entitled to qualified immunity. *See Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) (explaining the overlap between the Rule 12(b)(6) and qualified immunity analyses and stating that when the plaintiff fails to state a claim, the Government actor is also entitled to qualified immunity). The motion to dismiss this claim is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss for failure to state a claim (doc. 13) is **granted in part and denied in part** and defendants' motion to dismiss (doc. 6) is **moot**.

---

[7] This conclusion is not inconsistent with the court's conclusion that plaintiff has plausibly alleged that he engaged in protected activity for purposes of Title IX. *See Alozie v. Arizona Bd. of Regents*, 431 F. Supp. 3d 1100, 1114 (D. Ariz. 2020) (professor applying for internal promotion engaged in protected activity under Title VII when he stated during interview that Arizona State's environment was not favorable to minority scholars in terms of career advancement but failed to state First Amendment retaliation claim because the statement was made pursuant to his official duties as a diversity leader at the University).

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant David Spafford is dismissed from this case.

**IT IS SO ORDERED.**

Dated this 17th day of June, 2025, at Kansas City, Kansas.

                                              s/John W. Lungstrum
                                    HON. JOHN W. LUNGSTRUM
                                    United States District Judge